IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


TRANXITION, INC.,

                Plaintiff,

    v.

LENOVO (UNITED STATES) INC.,

                Defendant.

           No. 3:12-cv-01065-HZ

           OPINION & ORDER


Dayna Jean Christian
Immix Law Group
121 SW Salmon St., Ste. 1000
Portland, OR 97204

Paul H. Beattie
Rimon, P.C.
7920 SE Steller Way
Snoqualmie, WA 98065-9004

      Attorneys for Plaintiff


Todd E. Landis
Eric J. Klein
Akin Gump Strauss Hauer & Feld LLP
1700 Pacific Ave., Ste. 4100
Dallas, TX 75201

Marwan Elrakabawy
Fred I. Williams
Akin Gump Strauss Hauer & Feld LLP
600 Congress Ave., Ste. 1350
Austin, TX 78701

Kenneth L. Walhood
Blunck & Walhood LLC
2350 Willamette Falls Dr.
West Linn, OR 97068

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

      Plaintiff Tranxition, Inc. brings this patent infringement action against Defendant Lenovo (United States), Inc., alleging infringement of its United States Patent Nos. 6,728,877 ('877 patent) and 7,346,766 ('766 patent), both of which are titled "Method and System for Automatically Transitioning of Configuration Settings Among Computer Systems."  Defendant owns United States Patent No. 6,182,212 ('212 patent), titled "Method and System for Automated Migration of User Settings to a Replacement Computer System."  Defendant Lenovo counterclaimed that Plaintiff Tranxition infringes its '212 patent.

      Plaintiff filed a motion for order construing terms [138] in the '877 and '766 patents; and Defendant filed a motion for order construing terms [136] in the '212 patent.  A two-day hearing was held on August 26–27, 2014.  At the conclusion of oral argument, the court resolved the dispute as to all but two of the contested terms or phrases, which were taken under advisement: (1) "format" in the '877 and '766 patents and (2) "adapter" in the '212 patent.  On October 15, 2014, the parties submitted written expert testimony for the term "adapter."

      On Nov. 24, 2014, Defendant filed an unopposed motion to dismiss its counterclaim for infringement of the '212 patent.  The court granted the motion.  Nov. 24, 2014 Order [194]. Because of the dismissal of the counterclaim, there is no need to construe the term "adapter"

from the '212 patent. For the sole remaining term, the court construes "format" to mean "a specific arrangement of data." Therefore, Plaintiff's motion for order construing claims [138] is granted in part and denied in part, and Defendant's motion for order construing claims [136] is denied as moot.

BACKGROUND

The '877 and '766 patents share a history. The '766 patent is a continuation of the patent application that later became the '877 patent. The two patents share the same title, abstract, and specification. In general, the invention is a method and system for transferring configuration settings, a computer's "personality," from an old computer system to a replacement computer system. The abstract describes the invention as follows:

> A method and system for automatically transitioning configuration settings among computer systems. Multiple configuration settings comprising a computer "personality" are located on a source computing system using multiple transition rules from a personality object. The computer personality includes customization choices, data files, electronic mail, system preferences, application customization choices, the network environment, browser information, etc. The configuration settings are extracted from multiple locations on the source computing system. The multiple extracted configuration settings are stored in a pre-determined transition format. The multiple extracted configuration settings are manipulated. A transition package is created from the multiple manipulated configuration settings. The transition package includes the multiple manipulated configuration settings. The transition package is sent to a target computing system. The transition package is infused on the target computing system to automatically transition configuration settings from the source computing system to the target computing system. The method and system may vastly reduce transition, configuration and deployment times for service providers, corporations, and end-users when a new computing system is deployed.

Compl. Ex. A ('877 patent) at 1, Ex. B ('766 patent) at 1. Plaintiff asserts that Defendant infringes at least claims 1 and 16 of the '877 patent. Compl. ¶¶ 8, 15. Claims 1 and 16 are shown below.

**1.**  A method in a computer system for preparing configuration settings for transfer from a source computing system to a target computing system, the method comprising:

> providing configuration information about configuration settings on the source computing system, the configuration information including a name and location of each configuration setting;

> generating an extraction plan that identifies configuration settings to be extracted from the source computing system, the generating including providing a list of configuration settings known to the source computing system and including identifying active configuration settings out of the provided list of configuration settings to be extracted from the source computing system;

> extracting the active configuration settings of the extraction plan from the source computing system, the extracted configuration settings being located using the provided configuration information;

> generating a transition plan that identifies configuration settings to be transferred from the source computing system to the target computing system, the generating including providing active configuration settings of the extraction plan and including identifying from the active configuration settings of the extraction plan active configuration settings to be transferred from the source computing system to the target computing; and

> for each active configuration setting of the transition plan,
>> retrieving the extracted configuration settings identified as active configuration settings of the transition plan; and

>> transitioning one or more of the retrieved configuration settings from a format used on the source computing system to a format used on the target computing system.

'877 patent, 17:29–62.

**16.**  A computer system for preparing configuration settings for transfer from a source computing system to a target computing system, comprising:

> configuration information about configuration settings on the source computing system, the configuration information including a name and location of each configuration setting;

> a user interface application for generating an extraction plan that identifies configuration settings to be extracted from the source computing system and a transition plan that identifies configuration settings to be transferred

from the source computing system to the target computing system, the extraction plan identifying active configuration settings to be extracted from the source computing system, the transition plan identifying active configuration settings of the extraction plan to be transferred from the source computing system to the target computing;

an extraction application for extracting the active configuration settings of the extraction plan from the source computing system, the extracted configuration settings being located using the provided configuration information; and

an transition application that retrieves the extracted configuration settings identified as active configuration settings of the transition plan and transitions one or more of the retrieved configuration settings from a format used on the source computing system to a format used on the target computing system.

Id. at 18:42–19:3.

Plaintiff also asserts that Defendant infringes at least claim 1 of the '766 patent, as stated below.

**1**.  A method for preparing configuration settings of a source computing system for transitioning for use by a target computing system, the method comprising:

providing information about configuration settings of the source computing system, the information identifying locations of configuration settings;

displaying an indication of the configuration settings that can be extracted from the source computing system;

receiving a selection of configuration settings to be  extracted from the source computing system for use by the target computing system;

extracting the selected configuration settings from the locations of the source computing system indicated by the information;

manipulating at least one of the extracted configuration settings from a location, a name, a value, and a format used on the source computing system to a location, a name, a value, and a format used on the target computing system; and

storing the extracted configuration settings and the at least one manipulated configuration settings on a storage device], wherein the

5 - OPINION & ORDER

>stored configuration settings can be used by the target computing system
>to control its operation.

'766 patent, 17:51–18:8.

## CLAIM CONSTRUCTION STANDARDS

### I.    General Rules

"[T]he construction of a patent, including terms of art within its claim, is exclusively within the province of the court." Markman v. Westview Instruments, Inc., 517 U.S. 370, 372 (1996). Claims are construed independently and not simply as a choice between the parties' proposed constructions. Exxon Chem. Patents, Inc. v. Lubrizol Corp., 64 F.3d 1553, 1555 (Fed. Cir. 1995). "[C]laims should be so construed, if possible, as to sustain their validity." ACS Hosp. Sys., Inc. v. Montefiore Hosp., 732 F.2d 1572, 1577 (Fed. Cir. 1984) (citations omitted). The claim language specifies "'the subject matter which the applicant regards as his invention.'" Markman, 517 U.S. at 373 (citing and quoting 35 U.S.C. § 112).

To construe a patent claim, courts look to the language of the claims in the patent itself, the description in the patent's specification, and the prosecution history of the patent, all of which constitute a record "on which the public is entitled to rely." Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1583 (Fed. Cir. 1996); see also Dow Chem. Co. v. Sumitomo Chem. Co., 257 F.3d 1364, 1372 (Fed. Cir. 2001). Claim language is given its "ordinary and accustomed meaning as understood by one of ordinary skill in the art." Dow Chem. Co., 257 F.3d at 1372 (citation omitted). Courts cannot rewrite claims, but must "give effect to the terms chosen by the patentee." K–2 Corp. v. Solomon S.A., 191 F.3d 1356, 1364 (Fed. Cir. 1999) (citation omitted). In most cases, the court should be able to resolve ambiguous claim terms by only analyzing the intrinsic evidence. See Phillips v. AWH Corp., 415 F.3d 1303, 1313–14 (Fed. Cir. 2005) (en banc).

II.    Claim Language

"The actual words of the claim are the controlling focus." Digital Biometrics, Inc. v. Identix, Inc., 149 F.3d 1335, 1344 (Fed. Cir. 1998).  The starting point for claim construction is a disputed term's ordinary meaning.  Phillips, 415 F.3d at 1313.  Ordinary meaning, in the patent claim construction context, is the meaning that a person of ordinary skill in the art would attribute to a claim term in the context of the entire patent at the time of the invention, *i.e.*, as of the effective filing date of the patent application.  ICU Med., Inc. v. Alaris Med. Sys., Inc., 558 F.3d 1368, 1374 (Fed. Cir. 2009).

There is a "heavy presumption" that a claim term carries its "ordinary and customary meaning," and any party seeking to convince a court that a term has some other meaning "must, at the very least," point to statements in the written description that "affect the patent's scope." Johnson Worldwide Assocs., Inc. v. Zebco Corp., 175 F.3d 985, 989 (Fed. Cir. 1999) (quotation marks omitted).  This may be accomplished if:  (1) "a different meaning is clearly and deliberately set forth in the intrinsic materials" of the patent or (2) use of "the ordinary and accustomed meaning…would deprive the claim of clarity…." K–2 Corp., 191 F.3d at 1363.  In making this assessment, the court should use common sense and "the understanding of those of ordinary skill in the art" of the patent at issue, unless the patent history supplies another meaning. Id. at 1365; Digital Biometrics, 149 F.3d at 1344.

"An accused infringer may overcome this 'heavy presumption' and narrow a claim term's ordinary meaning, but he cannot do so simply by pointing to the preferred embodiment or other structures or steps disclosed in the specification or prosecution history." CCS Fitness, Inc. v. Brunswick Corp., 288 F.3d 1359, 1366 (Fed. Cir. 2002).  As clarified by the Federal Circuit:

> [A] court may constrict the ordinary meaning of a claim term in at least one of
> four ways.  First, the claim term will not receive its ordinary meaning if the

patentee acted as his own lexicographer and clearly set forth a definition of the disputed claim term in either the specification or prosecution history. Second, a claim term will not carry its ordinary meaning if the intrinsic evidence shows that the patentee distinguished that term from prior art on the basis of a particular embodiment, expressly disclaimed subject matter, or described a particular embodiment as important to the invention.

Third,…a claim term also will not have its ordinary meaning if the term chosen by the patentee so deprive[s] the claim of clarity as to require resort to the other intrinsic evidence for a definite meaning. Last, as a matter of statutory authority, a claim term will cover nothing more than the corresponding structure or step disclosed in the specification, as well as equivalents thereto, if the patentee phrased the claim in step- or means-plus-function format.

Id. at 1366–67 (quotation marks omitted).

III.   The Patent's Specification

"[C]laims are always construed in light of the specification, of which they are a part."

Netword LLC v. Centraal Corp., 242 F.3d 1347, 1352 (Fed. Cir. 2001). "That claims are

interpreted in light of the specification does not mean that everything expressed in the

specification must be read into all the claims." SRI Int'l v. Matsushita Elec. Corp. of Am., 775

F.2d 1107, 1121 (Fed. Cir. 1985) (quotations omitted). It is improper to import, or "read in" to a

claim, a limitation from the specification's general discussion, embodiments, and examples.

E.g., Enercon GmbH v. Int'l Trade Comm'n, 151 F.3d 1376, 1384 (Fed. Cir. 1998); Intel Corp.

v. United States Int'l Trade Comm'n, 946 F.2d 821, 836 (Fed. Cir. 1991) (holding that "[w]here

a specification does not require a limitation, that limitation should not be read from the

specification into the claims."); Constant v. Advanced Micro–Devices, Inc., 848 F.2d 1560, 1571

(Fed. Cir. 1988) (finding that "[a]lthough the specification may aid the court in interpreting the

meaning of disputed language in the claims, particular embodiments and examples appearing in

the specification will not generally be read into the claims.").

Still, "[c]laims are not interpreted in a vacuum." Slimfold Mfg. Co. v. Kinkead Indus.,
Inc., 810 F.2d 1113, 1116 (Fed. Cir. 1987). "[T]he specification is always highly relevant to the
claim construction analysis. Usually it is dispositive; it is the single best guide to the meaning of
a disputed term." Vitronics, 90 F.3d at 1582. Thus, it is improper to eliminate, ignore, or "read
out" a claim limitation in order to extend a patent to subject matter disclosed, but not claimed.
See, e.g., Ethicon Endo–Surgery, Inc. v. U.S. Surgical Corp., 93 F.3d 1572, 1582–83 (Fed. Cir.
1996).

Claims may not "enlarge what is patented beyond what the inventor has described as the
invention." Netword, LLC, 242 F.3d at 1352. For example, when the patent specification
describes the invention as including a feature, the claims should be construed to require that
feature. See, e.g., Watts v. XL Sys., Inc., 232 F.3d 877, 883 (Fed. Cir. 2000). Similarly, when
the specification criticizes or disclaims certain features in the prior art, the claims should not be
read to encompass the criticized features. SciMed Life Sys., Inc. v. Advanced Cardiovascular
Sys., Inc., 242 F.3d 1337, 1341 (Fed. Cir. 2001) (finding that the criticism of one type of
"lumen" in patent excluded that type from construction of the claim term).

Finally, claims should not be limited to the preferred embodiment. CVI/Beta Ventures,
Inc. v. Tura LP, 112 F.3d 1146, 1158 (Fed. Cir. 1997); see also Amhil Enter., Ltd. v. Wawa, Inc.,
81 F.3d 1554, 1559 (Fed. Cir. 1996) (holding that "[a] preferred embodiment…is just that, and
the scope of a patentee's claims is not necessarily or automatically limited to the preferred
embodiment").

"[T]he distinction between using the specification to interpret the meaning of a claim and
importing limitations from the specification into the claim can be a difficult one to apply in
practice." Phillips, 415 F.3d at 1323. "[T]here is sometimes a fine line between reading a claim

in light of the specification, and reading a limitation into the claim from the specification."
Decisioning.com, Inc. v. Federated Dep't Stores, Inc., 527 F.3d 1300, 1307-08 (Fed. Cir. 2008)
(quotation marks omitted).  "[A]ttempting to resolve that problem in the context of the particular
patent is likely to capture the scope of the actual invention more accurately than either strictly
limiting the scope of the claims to the embodiments disclosed in the specification or divorcing
the claim language from the specification."  Id. at 1308.  There is therefore "no magic formula or
catechism for conducting claim construction," and the court must "read the specification in light
of its purposes in order to determine whether the patentee is setting out specific examples of the
invention to accomplish those goals, or whether the patentee instead intends for the claims and
the embodiments in the specification to be strictly coextensive."  Id. (quotation marks omitted).
In walking this "tightrope," Andersen Corp. v. Fiber Composites, LLC, 474 F.3d 1361, 1373
(Fed. Cir. 2007), the court hews to the question of "how a person of ordinary skill in the art
would understand the claim terms."  Phillips, 415 F.3d at 1323.

IV.    Prosecution History

        Prosecution history of a patent with the United States Patent and Trademark Office
(USPTO) "limits the interpretation of claims so as to exclude any interpretation that may have
been disclaimed or disavowed during prosecution in order to obtain claim allowance."  Jonsson
v. Stanley Works, 903 F.2d 812, 817 (Fed. Cir. 1990) (quotation marks omitted).  The
prosecution "history contains the complete record of all the proceedings before the Patent and
Trademark Office, including any express representations made by the applicant regarding the
scope of the claims.  As such, the record before the Patent and Trademark Office is often of
critical significance in determining the meaning of the claims."  Vitronics, 90 F.3d at 1582–83.
Any statements or actions made in the prosecution history by the patentee characterizing what

the claimed invention includes or excludes provide notice to the public as to the scope of the

claims and therefore are binding on the construction of the claims.  See, e.g., Hockerson–

Halberstadt, Inc. v. Avia Group Int'l, Inc., 222 F.3d 951, 957 (Fed. Cir. 2000) (allowing patentee

to erase actions in the prosecution history would be "inimical to the public notice function

provided by the prosecution history.").

V.      Extrinsic Evidence

        Consideration of intrinsic evidence will resolve any claim term ambiguity in most

circumstances.  See Phillips, 415 F.3d at 1313–14.  Where it does not, however, the court may

consider certain "extrinsic evidence."  See id. at 1317.  Expert testimony, for example, may

provide helpful background on the technology at issue, explain how an invention works, or

establish that a claim term has a particular meaning in the relevant field.  See id. at 1319.

Dictionaries and treatises may also be helpful in this regard.  Id. at 1318.  However, precedent

counsels against reliance on dictionary definitions at the expense of the specification because

such reliance "focuses the inquiry on the abstract meaning of words rather than on the meaning

of claim terms within the context of the patent."  Id. at 1321; see also Nystrom v. Trex Co., 424

F.3d 1136, 1145 (Fed. Cir. 2005).

        In the end, the court's ultimate goal is to construe the disputed terms in a manner

consistent with the way the inventor defined them and a person of ordinary skill in the art would

understand them.  j2 Global Commc'ns Inc. v. Captaris Inc., No. CV 09–04150 DDP (AJWx),

2011 WL 837923, at *2 (C.D. Cal. Mar. 4, 2011).  "The construction that stays true to the claim

language and most naturally aligns with the patent's description of the invention will be, in the

end, the correct construction."  Phillips, 415 F.3d at 1316 (quotation marks omitted).

/ / /

DISCUSSION

I.      Oral Argument Rulings

The following terms were construed for the '877 and '766 patents after the completion of

the parties' oral argument.

| '877 and '766 PATENTS | |
|---|---|
| **Term** | **Ruling** |
| configuration settings | settings added and/or customized, but not including default settings |
| extraction plan | a plan for extracting configuration settings that includes a full list of identity units to be located, an exclusion list, and an inclusion list |
| (transitioning or transitions) one or more of the retrieved configuration settings from a format used on the source computing system to a format used on the target computing system | (changing or changes) the arrangement of data of one or more retrieved configuration settings from a format used on the source computing system to a format used on the target computing system |
| value | data stored in a variable or constant that is distinct from location, name, and format |
| personality | collection of configuration settings |
| personality object | an object oriented programming object, which (1) is not directly associated with an initialization file and (2) is not a wizard or other programming module capable of reading and writing settings, containing (3) at least one object with information about configuration settings and (4) multiple transition rules for locating configuration settings |
| transition plan | a plan that identifies configuration settings to be transferred |
| means for providing the transitioned configuration settings to a target computing system for installation of the configuration settings on the target computing system | Functionality:  providing the transitioned configuration settings to a target computing system for installation of the configuration settings on the target computing system

Agreed Structure:  floppy disk, zip disk, CD-ROM, email, TCP/IP, FTP, or other network transfer mechanisms, and the equivalents thereof |

| '877 and '766 PATENTS | |
| --- | --- |
| **Term** | **Ruling** |
| manipulating at least one of the extracted configuration settings from a location, a name, a value, and a format used on the source computing system to a location, a name, a value, and a format used on the target computing system | changing at least one of the extracted configuration settings from a location, a name, a value, and a format used on the source computing system to a location, name, value, and format used on the target computing system |

In addition, the parties had previously agreed that the following terms would be given their plain and ordinary meaning: "providing," "application," "installation application," "information for locating," and "storing the extracted configuration settings and the at least one manipulated configuration settings on a storage device."

II.    "Format"

Plaintiff argues that "format" should be construed as "specific arrangement of data." Second Am. Joint Proposed Claim Constr. [135] at 4.  Initially, Defendant argued that the term was indefinite and not amenable to construction.  Id.  However at oral argument, Defendant withdrew its indefiniteness argument.  Defendant proposes that the term be construed as "the specific arrangement of data that is distinct from name, location, and value."  Id. at 4–5.

The court agrees with the parties that "format" involves the "specific arrangement of data."  The specification is replete with references to "format" as data that can be stored in multiple ways.  '877 patent, 3:20–28; 4:35–38; 7:18–22; 8:3–8; 13:14–25.  The remaining issue is whether "format" needs to be "distinct from name, location, and value."

Plaintiff and Defendant reference various pieces of evidence to support their arguments. Plaintiff points out that the specification discusses "format" in a broad sense, and that it is not distinguished from "name," "location," or "value."  Defendant directs the court to the claim

language of the '766 patent in which "format" is claimed separately from "name," "location,"

and "value" and the prosecution history of the '766 patent to support its argument.

    Of the independent claims in the '766 patent, only claims 1 and 16 use "format" and

"name," "location," and "value" together in the manipulation step.  '766 patent, 17:66–18:3

(claim 1); 18:65–19:4 (claim 16).  In the '766 patent, claim 1 involves the step of "manipulating

at least one of the extracted configuration settings from *a location, a name, a value, and a*

*format*" and claim 16 provides that "at least one of the extracted configuration settings is

manipulated from *a source location, a source name, a source value, and a source format*[.]"  Id.

(emphasis added).  Unlike the '766 patent, independent claims 1 and 16 of the '877 patent

describe transitioning only the "format" of the configuration setting.  '877 patent, 17:59–62

(claim 1); 18:65–19:3 (claim 16).  There is no mention of transitioning the location, name, or

value of the configuration settings in the '877 patent claims.

    During the prosecution of the '766 patent, Defendant argues that the inventor

distinguished "format" from "name," "location," and "value" to obtain the patent.  Def.'s Resp.

5.  The USPTO had rejected claim 37 of the patent application (claim 1 of the '766 patent) in

light of "Hunter," a prior art reference.  Klein Decl. Ex. B (May 1, 2007 Office Action) at 7–8.

To overcome the rejection in light of Hunter, the inventor amended claim 37 by adding the

underlined language:

> manipulating at least one of the extracted configuration settings from a location, a
> name, a value, and a format used on the source computing system to a location, a
> name, a value, and a format used on the target computing system…

Id. at 2.  The inventor explained to the USPTO that Hunter did not "teach or suggest

manipulating…configuration settings."  Id. at 14–15.  The inventor argued that Hunter's use of

"tokens" is not the same as "manipulating the format" of the configuration setting.  Klein Decl.

Ex. C (Oct. 30, 2007 Request for Continued Examination) at 14.  As an example, in Hunter, the location of a configuration setting corresponds to a particular "path" identified by the token.  Id. The inventor argued that Hunter's use of tokens "corresponds to mapping a setting from a location on the first computer to a location on the second computer," which does not manipulate "the format of a setting."  Id. at 14–15.  In light of this last statement, Defendant argues that the inventor distinguished "format" from "location," i.e., that changing the "format" of a setting is different from changing the "location" of the setting.  Def.'s Resp. 6.  Defendant makes a similar argument that a change in the "name," i.e., the "path," of a configuration setting is not the same as changing the "format."  Id. at 5.  The inventor had argued to the USPTO that "the path [i.e., 'name'] of a setting does not correspond to the setting's format."  Klein Decl. Ex. C at 14.

There is no evidence that during the prosecution of the '877 patent, the inventor argued that changing the "format" is not the same as changing the "location" of a configuration setting. In other words, it appears that while "format" was used broadly in the '877 patent claims, "format" was used in a narrower sense in the '766 claims.

In light of the difference in claim language and prosecution histories in the '877 and '766 patents and the prosecution history of the '766 patent, the court declines to impose the limitation that the data is "distinct from name, location, and value."  Therefore, "format" is construed to mean "a specific arrangement of data."

/ / /

/ / /

/ / /

/ / /

/ / /

15 - OPINION & ORDER

CONCLUSION

Based on the foregoing, Plaintiff's motion for order construing claims [138] is granted in part and denied in part.  The terms are construed as stated on the record and in this opinion and order.  Defendant's motion for order construing claims [136] is denied as moot because the counterclaim for infringement of the '212 patent has been dismissed.

IT IS SO ORDERED.

Dated this ____ day of December, 2014.

_____
MARCO A. HERNÁNDEZ
United States District Judge

16 - OPINION & ORDER